12 F.3d 1101
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John Lee LIPSCOMB-BEY and Ronnie Johnson-Bey, Plaintiffs-Appellants,
v.
James CHRANS, Robert Horn, and Billie E. Dukes, Defendants-Appellees.
 No. 91-2410.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 19, 1993.*
Decided Nov. 22, 1993.
 
 Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.
 
 Order
 
 1
 John L. Lipscomb-Bey, an inmate of the Menard Correctional Center, brought this civil rights suit against officials of the Illinois Department of Corrections.[1] The plaintiffs alleged that the defendants had violated their constitutional rights by failing to make arrangements for a minister of the Moorish Science Temple of America to conduct services at Menard, or, in the absence of clergy, to allow the inmates to conduct services themselves. A magistrate judge denied monetary relief but directed the defendants to permit inmate-led services until a minister could be found. This court vacated the judgment. Johnson-Bey v. Lane, 863 F.2d 1308 (7th Cir.1988). On remand the magistrate judge, hearing the case by consent under 28 U.S.C. Sec. 636(c), held an evidentiary hearing and entered judgment in favor of defendants.
 
 
 2
 After our remand the parties agreed to a bench trial before the same magistrate judge, and the plaintiffs stipulated that they were suing defendants James Chrans, Robert Horn, and Billie E. Dukes[2] in their individual capacities and seeking only monetary damages. Evidentiary Hearing Tr. 7. The parties agreed that in light of this court's opinion only two issues remained for resolution: whether the delay in obtaining Moorish clergy to minister to Menard inmates can be laid at the doorstep of the defendants and whether the unwritten policy prohibiting all inmate-led religious services violated the equal protection clause of the fourteenth amendment. See 863 F.2d at 1311-13.
 
 
 3
 The Moorish Science Temple is an Islamic sect based in Mt. Clemens, Michigan, whose recognized spiritual leader is Grand Sheik Brother R. Love-El. The faith has two dissident factions, based in St. Louis, Missouri, and Baltimore, Maryland. When inmates first requested that Moorish services be held at Menard, they told Chrans and Horn that the Baltimore branch ministry was the legitimate representative of the faith. Two emissaries from the Baltimore branch met with Chrans, Horn, and Dukes in 1981 and advised the defendants that they could not conduct services at Menard on a regular basis and that no legitimate Moorish Science ministers were available in Illinois or Missouri. The application of George Walton-Bey, a Moorish minister who offered to provide services to the Menard inmates, was submitted to the defendants in 1985, but was rejected because Walton-Bey had a felony conviction. It was also established that Walton-Bey was a member of the St. Louis faction of Moorish unacceptable to the religious hierarchy in Mt. Clemens.
 
 
 4
 During the pendency of this action, no defendant contacted Brother R. Love-El to obtain a Moorish minister. At least one defendant testified that he did not learn of the existence of Brother Love-El or the Mt. Clemens branch until 1986 or 1987.[3] Although another Moorish minister, Clifford Warner-Bey, was conducting regular services at the Stateville and Pontiac Correctional Centers during 1980-1986, and could have done so at Menard as well, he too was not contacted. The defendants testified that their failure to obtain a Moorish minister was caused by plaintiffs' failure to submit an acceptable program proposal, not bad faith or a desire to stall.
 
 
 5
 The magistrate judge concluded that the defendants did not delay unreasonably in attempting to provide an acceptable Moorish minister to lead services at Menard and that their refusal to permit inmate-led services was constitutionally permissible.
 
 
 6
 Prison regulations that restrict the exercise of an inmate's speech and religious exercise are judged under a "reasonableness" standard. A prison may establish restrictions that are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987), (quoting from Turner v. Safley, 482 U.S. 78, 89 (1987). As this court observed the first time the case was here, defendants' failure to obtain a Moorish minister to lead services at Menard, and their insistence that inmate-led services compromised institutional security, did not violate the plaintiffs' constitutional rights. 863 F.2d at 1311-12. Because prison officials may not, however, arbitrarily limit an inmate's participation in religious observances, it is still necessary to decide whether the defendants' actions represented a reasonable compromise between legitimate penological concerns and the inmates' desire to practice their religion.
 
 
 7
 The evidence in this case supports the magistrate judge's finding that the defendants' delay in providing Moorish services at Menard stems from the plaintiffs' failure to submit an acceptable program statement or to provide information enabling them to locate a Moorish minister. During the pendency of this suit, three factions were competing for leadership of the sect. One of these, the Baltimore faction, informed Chrans, Horn, and Dukes that there were no legitimate Moorish ministers available to conduct regular services at Menard. Although plaintiff Johnson-Bey was present at the 1981 meeting, he failed to dispute this assertion either then or in his 1982 proposal for inmate-led services. The subsequent rejection of Walton-Bey's application to conduct Moorish services at Menard conformed with the department's long-standing policy of prohibiting felons from entering Illinois prisons (at least, from entering prisons after their own sentences had expired). The magistrate judge did not err in finding the defendants' actions reasonable under the circumstances.
 
 
 8
 Plaintiffs argue that the prison's unwritten policy of disallowing inmate-led services was arbitrarily enforced, because, they say, other religions were permitted to conduct inmate-led services with staff supervision and nonreligious organizations were routinely permitted to hold inmate-led meetings. Prison officials confronted with an equal protection claim "need only demonstrate a rational basis for their distinctions between organizational groups." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 134 (1977). The defendants' decision to treat religious and nonreligious groups differently reflects legitimate security concerns, see Hadi v. Horn, 830 F.2d 779, 784-86 (7th Cir.1987), and is therefore rational. This leaves only the plaintiffs' claim that the ban against inmate-led services was enforced against their religion but not others. The magistrate judge found, however, that defendants did not allow any religious groups to hold inmate-led services at Menard. This finding is not clearly erroneous. Chrans, Horn, and Dukes each testified that the ban against inmate-led religious services was enforced against all religious groups. A decision supported by such direct testimony cannot be condemned as clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564 (1985). All inmates were allowed to pray; all were forbidden to hold organized, inmate-led services. Moorish adherents were not disfavored.
 
 
 9
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record
 
 
 [1]
 The plaintiffs originally included Reginald Morgan-Bey, who did not appeal, and Ronnie Johnson-Bey, who appealed but did not file a brief in this court. Johnson-Bey's appeal is dismissed for want of prosecution
 
 
 [2]
 This spelling of Rev. Dukes' name comes from a memorandum dated March 17, 1981, bearing his signature
 
 
 [3]
 A program statement submitted in 1982 by one inmate mentioned Brother Love-El but called for inmate-led religious services rather than services by outside ministry. It was rejected for that reason